## A97A2574. CANNON v. THE STATE.
(496 SE2d 330)

ANDREWS, Chief Judge.

Juan Antonio Cannon appeals from the denial of his motion for new trial after conviction of first degree arson.

1. Cannon's second enumeration contends there was insufficient evidence for the conviction. The indictment charged that Cannon unlawfully "damaged the structure and dwelling located at 3627 Forest Park Road, . . . , without the consent of the owner . . . and the dwelling was occupied at the time."

" 'On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence.' (Citations and punctuation omitted.) *Curtis v. State*, 208 Ga. App. 720, 721 (431 SE2d 719) (1993)." *Etienne v. State*, 219 Ga. App. 95, 97 (2) (464 SE2d 396) (1995).

So viewed, the evidence was that Cannon was living with Pritchett and her two children in an apartment complex owned by Pyle. Of the eleven units in the apartment building, nine were occupied in December 1994. On the evening of December 17, 1994, Cannon beeped Pritchett to pick him up at a MARTA station after he finished work, which she did. Later that evening, Pritchett took Cannon to a store where he encountered Marsh, a prostitute. Unknown to Pritchett, Cannon agreed to buy crack and exchange it for sex with Marsh. After Pritchett had gone to sleep in the bedroom with her children, Cannon and Marsh partook of the cocaine[1] and engaged in sex. They

---

[1] An antenna broken off a car and a Brillo pad were used to fashion a pipe.

were discovered by Pritchett, who became enraged and told Cannon and Marsh to leave. Pritchett took her children, got in her car and blew the horn repeatedly. She saw Marsh try to leave the apartment, but be pushed back by Cannon. Minutes later, Marsh left the apartment and had a bloody nose. Pritchett again told Cannon to leave the apartment, and then she drove off.

Around 4:00 a.m., Roberts, Cannon's neighbor who knew both Cannon and Pritchett, was awakened by a commotion and got up to check it out. He saw a woman he did not know talking to one of his neighbors about using the phone. Later, he heard Pritchett outside blowing her horn. He walked around the apartment building to check on things and noticed nothing out of the ordinary, aside from the commotion, before returning to his apartment. Because of the continuing noise, he got back up and went to Pritchett's apartment where he saw her driving around in the parking lot. He saw that Cannon was in the apartment, and as Roberts approached, Cannon slammed the door. Roberts walked around to the rear of the unit and tried to see in the kitchen. All he could see was a shadow moving in the living room. He returned to his unit and heard glass break at Pritchett's apartment. When he looked out the back of his apartment, he saw Cannon crouching at a rear window of Pritchett's unit and then get up and leave in the opposite direction. Flames could be seen coming out of Pritchett's kitchen window. Roberts returned to Pritchett's unit and kicked in the door because a sofa was blocking it and discovered the apartment in flames.

The fire gutted five units and severely damaged six. Arson investigator Phillips investigated and determined that there were two points of origin for the fire, one at the front door on or near the sofa and one in the rear bedroom on a mattress.

Cannon denied setting the fire, contending that Marsh's smoking of crack on the sofa was to blame. " ' "The jurors in this case heard the (witnesses), and are better qualified to judge the reasonableness of a hypothesis raised by evidence . . . than is this court which is restricted to a cold record and to issues of law. (Cit.)" ' [*Powell v. State*, 171 Ga. App. 876, 878 (1) (321 SE2d 745) (1984)]." *Steidl v. State*, 215 Ga. App. 17, 19 (449 SE2d 644) (1994). The jurors resolved these conflicts, and the evidence is legally sufficient. Id.

2. The second enumeration is that the court "did not fulfill its duty to clarify jury confusion about the law to be applied to [Cannon's] case."

The court instructed the jury by reading the charge as stated in the indictment and then defining arson in the first degree as a person "by means of fire knowingly and intentionally damag[ing] any dwelling house of another, . . . without the consent of the owner *while the dwelling was occupied at the time.*" (Emphasis supplied.) This was

Cannon's Request to Charge No. 16. Occupancy at the time of the fire is not included in the statutory definition of the crime. OCGA § 16-7-60 (a) (1); *Steidl*, supra.

After beginning deliberations, the jury sent a written inquiry asking if there was another degree of arson besides first and if "they're charged with first degree, must we follow that? What is necessary for first degree?" The court then reread the indictment, including the "occupied" language; OCGA § 16-7-60 (a) (1), which does not require the dwelling to be occupied; and OCGA § 16-7-61, arson in the second degree which requires, as applicable here, burning "any building," not necessarily a dwelling. The court also specifically instructed the jury at that time that "the State must prove the offense *as charged in the indictment* and that's the charge." (Emphasis supplied.)

A single juror then verbally asked the court to "clarify the first and second degree, the difference between the two of them." The court responded "I just read them to you. I don't want to editorialize it."

Cannon contends that this refusal to "clarify" jury confusion was reversible error, based on, e.g., *Matthews v. Taylor*, 155 Ga. App. 2, 3 (2) (270 SE2d 247) (1980) and *Freeman v. State*, 142 Ga. App. 293, 294 (4) (235 SE2d 560) (1977). Those cases, however, are situations where, in response to the jury's written inquiry, the court gave no further instructions, but referred them to the previously given instructions. That is not adequate. Id.

Here, on the other hand, the court fully charged the elements of the crime charged in the indictment as well as the statutory elements in response to the jury's question.

Pretermitting the fact that only a single juror made further inquiry after the recharge here, not the entire jury, which may not denote "confusion" of the entire jury so as to trigger the need to recharge, id., the recharge given by the court here was sufficient to address the jury's question, and there was no abuse of discretion in not further responding to the individual juror. *Thomas v. State*, 268 Ga. 135, 141 (17) (485 SE2d 783) (1997); *Branam v. State*, 204 Ga. App. 205 (419 SE2d 86) (1992); *Baxter v. State*, 176 Ga. App. 154, 157 (7) (335 SE2d 607) (1985).

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JANUARY 23, 1998 —
RECONSIDERATION DENIED FEBRUARY 4, 1998.

*Jana M. Whaley*, for appellant.

*Paul L. Howard, Jr., District Attorney, Cari K. Johanson, Phyllis M. Burgess, Assistant District Attorneys*, for appellee.