IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 28 2008

COURT OF APPEALS
DIVISION TWO



CATHERINE E. WARNER,                    )
                                        )       2 CA-CV 2007-0041
                  Plaintiff/Appellant,  )       DEPARTMENT A
                                        )
            v.                          )       O P I N I O N
                                        )
SOUTHWEST DESERT IMAGES, LLC,           )
BARBARA JEAN HOGGATT, DAVID J.          )
HOGGATT, ROBERT A. WILSON,              )
DAWN WILSON, and SIERRA                 )
PEST/TERMITE CONTROL, INC.,             )
                                        )
                  Defendants/Appellees. )
                                        )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200400632

Honorable Stephen M. Desens, Judge

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH DIRECTIONS

Law Offices of Shane L. Harward, P.L.C.
  By Shane L. Harward                                             Scottsdale
                                            Attorney for Plaintiff/Appellant

Holloway Odegard Forrest & Kelly, P.C.
  by Peter C. Kelly, II and Larry J. Wulkan                        Phoenix
                                        Attorneys for Defendants/Appellees

B R A M M E R, Judge.

¶1        Appellant Catherine Warner appeals from the trial court's dismissal of her negligence claims against appellees David Hoggatt and Barbara Hoggatt (Hoggatt), Robert Wilson and Dawn Wilson (Wilson), and Sierra Pest/Termite Control, Inc. (Sierra Pest).[1] She also asserts the trial court erred by refusing to give her requested jury instruction on punitive damages, by granting the appellees' motion in limine concerning evidence of her workers' compensation benefits, by failing to answer jury questions asked during trial, and by awarding the appellees sanctions pursuant to Rule 68, Ariz. R. Civ. P.  We affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

## Factual and Procedural Background

¶2        Appellee Southwest Desert Images, LLC (SDI) was hired by Warner's employer, Aegis Communications (Aegis), to perform landscaping and weed control.  On September 29, 2003, SDI employee Hoggatt began spraying an herbicide on weeds on the property around Aegis's building.  The parties dispute whether other SDI employees had been present and engaged in spraying.  After approximately an hour and a half of spraying, Hoggatt was informed that people inside Aegis's building were complaining.  The herbicide spray had entered the building through its air conditioning system and had circulated throughout the building.  After being informed of the situation, Hoggatt stopped spraying. Emergency services arrived as the building was being evacuated. Employees in the building complained of respiratory problems and itching and burning eyes.

---

[1]Although the spouses of David Hoggatt and Robert Wilson were named as parties, for convenience, we refer to David and Robert as individuals.

2

¶3 Prior to and during the evacuation, Warner began having difficulty breathing, was coughing violently, and felt burning in her eyes, nose, and throat. As she exited the building, Warner began to feel faint and felt "extreme chest pain" and heart palpitations. Warner had had heart attacks in January 1998 and April 2003, and had undergone heart surgery in May 2003. Warner apparently had been instructed to carry nitroglycerine and take it if she felt angina, or heart pain, so she took some after she left the Aegis building. She was then transported by ambulance to the hospital, where she was treated and released after about four hours. She returned to Aegis and drove home.

¶4 Warner testified she continued to have angina and palpitations that night. She visited her doctor two days later. He concluded she had suffered a heart attack the day of the evacuation. Warner continued to have a "scratchy throat and watery eyes" for about ten days after the incident, continued to suffer from chest pain, balance problems, short-term memory loss and other neurological problems, nausea, muscle aches, and fatigue, and has not worked since the incident. Warner had heart surgery that October, and again in January 2004. She suffered another heart attack shortly after the latter surgery, which was followed by emergency surgery and further surgery in September 2004. Warner had a pacemaker implanted in June 2005.

¶5 Warner sued SDI for negligence in September 2004, later amending her complaint to include as defendants Hoggatt, Wilson, and Sierra Pest, Wilson's employer. She alleged SDI was a "branch office" of Sierra Pest and operated under Wilson's qualifying

3

party license,[2] and thus that Wilson and Sierra Pest were liable for Hoggatt's negligent herbicide spraying and "for the [negligent] supervision and training of . . . Hoggatt." SDI admitted it operated under Wilson's qualifying party license.

¶6 The trial court dismissed Wilson and Sierra Pest from the action prior to trial because Warner had not filed an expert opinion affidavit as required by A.R.S § 12-2602. The court granted Warner's motion for summary judgment on Hoggatt's negligence and SDI's corresponding vicarious liability. Accordingly, those issues were not disputed at trial. Nonetheless, during trial, the court entered a directed verdict in favor of Hoggatt, leaving SDI as the only defendant.

¶7 The jury found SDI to be completely responsible for the injuries Warner suffered by inhaling the herbicide. The jury attributed no responsibility to Warner and her doctor, who had been designated as a nonparty at fault. It awarded Warner $3,825 in compensatory damages and costs against SDI. But, the court granted the appellees' motions for offer-of-judgment sanctions pursuant to Rule 68, Ariz. R. Civ. P.[3] The trial court

---

[2]Sections 32-2301 through 32-2329, A.R.S., govern Arizona's Structural Pest Control Commission (SPCC) and the certification, registration, licensure, and regulation of persons or businesses engaged in the business of structural pest control, including weed control. A person or business applying for a license to "engage in the business of structural pest control" must provide "the name and address of the qualifying party and written documentation of how the qualifying party will be active in the day-to-day management of the business licensee." § 32-2313 (A), (B)(3). A qualifying party is "an individual who is licensed by the commission to ensure the supervision and training of all employees of a business licensee in the business of structural pest control." § 32-2301(20).

[3]SDI had offered to confess judgment in favor of Warner in the amount of $30,000; Sierra Pest had offered $1,501; and Hoggatt and Wilson had each offered Warner $1.

4

awarded the appellees $71,401.38 jointly after accounting for the Rule 68 sanctions, Hoggatt's, Wilson's, and Sierra Pest's costs pursuant to A.R.S. § 12-341, and deducting Warner's damage award and costs. This appeal followed.

**Discussion**

Hoggatt Dismissal

¶8        On the last day of trial, the court entered a directed verdict in favor of Hoggatt because "the evidence [wa]s undisputed that Mr. Hoggatt [had] acted within the scope of his employment for [SDI]," and, thus, that SDI was "clearly liable in this situation for whatever damages the jury does find in this matter."[4] There was no dispute at trial that Hoggatt had been negligent; the court had previously granted Warner's motion for partial summary judgment on that issue and on SDI's liability under the doctrine of respondeat superior for Hoggatt's negligence. *See Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 135, 876 P.2d 1166, 1170 (App. 1994) ("According to the doctrine of *respondeat superior*, 'an employer is vicariously liable . . . for the behavior of an employee who was acting within the course and scope of his employment.'"), *quoting Pruitt v. Pavelin*, 141 Ariz. 195, 205, 685 P.2d 1347, 1357 (App. 1984); *see generally* Restatement (Third) of Agency §§ 7.03, 7.07 (2006). The jury was instructed that "[i]t is undisputed that the manner in which the herbicide was applied to the Aegis property caused it to be circulated through the building."

---

[4]Although the trial court referred to its ruling as a directed verdict, the 1996 amendments to Rule 50, Ariz. R. Civ. P., replaced that term with "judgment as a matter of law" (JMOL). We use the terms interchangeably, as "[t]he tests for granting a directed verdict and a JMOL motion are the same." *Murcott v. Best Western Int'l, Inc.*, 198 Ariz. 349, ¶ 36, 9 P.3d 1088, 1095 (App. 2000).

"We review the grant of a motion for directed verdict *de novo* and consider the evidence in the light most favorable to the non-moving party." *Johnson v. Pankratz*, 196 Ariz. 621, ¶ 4, 2 P.3d 1266, 1268 (App. 2000).

¶9        We agree with Warner that "[t]here [wa]s no legal basis for the court's decision to dismiss Hoggatt from the action." "It is well-established law that an agent will not be excused from responsibility for tortious conduct [merely] because he is acting for his principal." *Griffith v. Faltz*, 162 Ariz. 599, 600-01, 785 P.2d 119, 120-21 (App. 1990); *see also* Restatement (Third) of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts . . . within the scope of employment.").

¶10        Hoggatt cites no authority suggesting this rule should not apply in this case. He does, however, argue the error was harmless. "In order to justify reversal, . . . the trial error must be prejudicial to the substantial rights of the appealing party." *Walters v. First Fed. Sav. & Loan Ass'n of Phoenix*, 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982). Hoggatt asserts Warner was not prejudiced because "[t]he jury apportioned one hundred percent of the fault to SDI. Adding other possible parties to the jury verdict form would not have changed the outcome of this case." We agree that including Hoggatt as a defendant throughout the trial could not have changed Warner's damage award, and Warner does not argue otherwise. Nor is there a need for the jury to apportion fault between Hoggatt and SDI—the liability of those parties is joint and several. *See* A.R.S. § 12-2506(D)(2) (when

6

one party "was acting as an agent or servant" of another party, parties' liability is joint and several).

¶11        That the error does not warrant a new trial, however, does not mean it was not prejudicial to Warner. She has a right to recover her damages from Hoggatt, and his improper dismissal has deprived her of that right.[5] Accordingly, we reverse the trial court's grant of a directed verdict in Hoggatt's favor and amend the judgment in Warner's favor to show it is against Hoggatt as well.

Wilson and Sierra Pest Dismissals

¶12        Wilson and Sierra Pest filed a motion to dismiss Warner's claims against them, asserting that, because Wilson is a licensed professional, expert testimony was required to establish Wilson had breached the relevant standard of care. Thus, Wilson and Sierra Pest argued, Warner was required by A.R.S. § 12-2602(B) to file a "preliminary expert opinion affidavit," and her failure to do so required the trial court to dismiss without prejudice Warner's claims pursuant to § 12-2602(F) against Wilson and Sierra Pest, as Wilson's employer. The court denied the motion to dismiss, reasoning that § 12-2602

> only grants the Court the power . . . to dismiss the cause of
> action . . . against the licensed professional after the claimant
> has certified that a preliminary expert opinion affidavit is

---

[5]Hoggatt's reliance on *Rager v. Superior Coach Sales & Service of Arizona*, 110 Ariz. 188, 516 P.2d 324 (1973), is misplaced. There, our supreme court stated: "While as between joint tort-feasors the recovery of a judgment against one does not bar an action against another, the satisfaction of the judgment obtained discharges the others from any liability." *Id*. at 191, 516 P.2d at 327. That case addressed the satisfaction of a judgment, not whether a plaintiff has a right to recover from a jointly-and-severally liable tortfeasor when the judgment has not been satisfied by another tortfeasor.

7

necessary and fails to timely file . . . the same or the Court has ordered the claimant to file . . . a[n affidavit] and that party has failed to timely [do so].

¶13        Wilson and Sierra Pest subsequently moved the trial court to order Warner to file a preliminary expert opinion affidavit. Although Warner had yet to respond to the motion, the court granted it. Eight days later the court entered that order and because Warner had not yet filed an expert affidavit, Wilson and Sierra Pest renewed their motion to dismiss based on § 12-2602. The court granted the motion and dismissed the complaint against Wilson and Sierra Pest.[6]

¶14        Warner argues on appeal that an expert opinion affidavit was not required under her theories of Wilson's and Sierra Pest's liability and, even if such an affidavit were required, the trial court lacked the authority to dismiss her claims because it had not, as required by § 12-2602(E), established either a date or terms for Warner's compliance with its order that she file that affidavit. At trial, "the determination of areas where expert testimony is appropriate is within the trial court's discretion." *State v. Mosley*, 119 Ariz. 393, 400, 581 P.2d 238, 245 (1978). We see no reason the same standard should not apply to a trial court's decision whether expert testimony is required under § 12-2602. But, to the extent Warner's argument depends on the interpretation of § 12-2602 and related statutes,

_____

[6]In its initial ruling and minute entry, the trial court granted the motion to dismiss "as to vicarious liability," without discussing the motion to dismiss as it pertained to Warner's claim against Wilson and Sierra Pest for negligent supervision and training of Hoggatt. Later, however, the court stated it had dismissed Wilson and Sierra Pest from the lawsuit entirely.

8

we review the court's determination de novo. *See Gorney v. Meaney*, 214 Ariz. 226, ¶ 4, 150 P.3d 799, 801 (App. 2007).

¶15 Before we begin our discussion of this issue, we note that the parties devote a considerable portion of their briefs to whether the evidence or the law support Warner's theories of Wilson's and Sierra Pest's liability. Those issues are not before us, nor were they before the trial court; the court dismissed the claims solely because Warner had failed to file an expert witness affidavit when ordered to do so, not because she had failed to state a claim. Indeed, the court denied both Warner's and Wilson and Sierra Pest's motions for summary judgment on the issue of liability. Whether the evidence or the law supports Warner's underlying claim is irrelevant to whether the court erred in dismissing the claim because Warner failed to file an expert opinion affidavit.

¶16 Warner asserts that no expert opinion affidavit is required for her claim that, because Hoggatt "was a *de facto* employee" of Wilson and Sierra Pest, they are liable for Hoggatt's negligence under the doctrine of respondeat superior. As we have noted, Hoggatt's negligence had already been established, thus, no expert testimony was required to prove it. Section 12-2602 requires a plaintiff to file and serve the opposing party with an expert opinion affidavit for any "claim against a licensed professional" if "expert opinion testimony is necessary to prove the licensed professional's standard of care or liability for the claim." That affidavit must contain the expert's qualifications, the factual basis for the claim, "[t]he licensed professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability," and "[t]he manner in which

9

the licensed professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant." § 12-2602(B). Section 12-2601(1), A.R.S., defines a "[c]laim" as a legal cause of action asserted against a licensed professional, where "[e]xpert testimony is necessary to prove the licensed professional's standard of care or liability for the claim," and where the cause of action "is based on the licensed professional's alleged breach of contract, negligence, misconduct, errors or omissions in rendering professional services."

¶17        The parties do not dispute that Wilson is a licensed professional. That does not necessarily mean, however, that Warner was required to file an expert opinion affidavit here. Respondeat superior liability is vicarious liability; the negligence of the principal is not relevant, only the principal's relationship with the tortfeasor. *See* 2 Dan B. Dobbs, *The Law of Torts*, § 333, at 906 (2001) ("Vicarious liability is not based upon the defendant's own fault. Rather, it is based upon the principle that he must stand good for the wrong of another person."); *Wiggs v. City of Phoenix*, 198 Ariz 367, ¶ 13, 10 P.3d 625, 629 (2000) ("[T]hose whose liability is only vicarious are fault free—someone else's fault is imputed to them by operation of law."). The definition of a "claim" under § 12-2601 does not include one based on vicarious liability. Rather, it refers to the "licensed professional's alleged . . . negligence." § 12-2601(1)(b). Thus, a claim grounded on respondeat superior liability is not a "claim" as contemplated by § 12-2602, and an expert affidavit is only required if expert testimony is necessary to prove the tortfeasor's liability based on his or her own conduct.

¶18        Moreover, in a case involving a licensed professional's vicarious liability, there is no standard of care applicable to the professional because liability is based only on the

professional's relationship with the party who committed the underlying tort. Therefore, in a vicarious liability claim against a licensed professional, there is no need for an expert opinion affidavit, and the trial court erred by requiring Warner to provide one for her claims resting on vicarious liability.[7]

¶19 Relevant to both her direct and vicarious liability claims against Wilson and Sierra Pest, Warner next argues that, even if the trial court had not erred by ordering Warner to submit expert opinion affidavits, erred in dismissing her claims against Wilson and Sierra Pest for the reason it cited. We agree. Section 12-2602(E) provides that when a trial court determines an affidavit is required, it must "set a date and terms for compliance." The court did not do so here.[8] Accordingly, although § 12-2602(F) permits a trial court to dismiss a claim if a plaintiff fails to comply with an order to file and serve an expert witness affidavit, the court here did not enter a proper order under § 12-2602(E). Therefore, the court abused its discretion in dismissing Warner's claims against Wilson and Sierra Pest based on Warner's failure to submit an affidavit.[9]

---

[7]Warner also asserts that Arizona's statutory and regulatory scheme governing the business of structural pest control makes Wilson and Sierra Pest vicariously liable for Hoggatt's negligence by operation of law. *See* A.R.S. §§ 32-2301 through 32-2329. Assuming, without deciding, that this liability theory is valid, it too rests on vicarious liability and would not require an expert opinion affidavit under § 12-2602.

[8]Moreover, the trial court granted Wilson's and Sierra Pest's "Motion for Order Requiring Expert Testimony" without awaiting Warner's response to that motion. The court also never addressed Warner's request for "a reasonable amount of time to provide an [expert opinion] affidavit."

[9]Warner also argues Wilson is liable for his own negligence in the training and supervision of Hoggatt. She asserts that no expert opinion affidavit was required because the

11

¶20     For the reasons stated above, we reverse the trial court's order dismissing Wilson and Sierra Pest. Again, like the dismissal of Hoggatt, the dismissal of Wilson and Sierra Pest does not warrant a new trial on the issue of Warner's compensatory damages. Wilson's and Sierra Pest's liability, however, must be determined at a new trial, and, if necessary, the trier of fact must apportion the fault, if any, of the various defendants. *See* A.R.S. § 12-2506.

Punitive Damages

¶21     On March 30, 2006, the appellees collectively moved for summary judgment on the issue of punitive damages.[10] In her response, Warner argued that not only were there genuine issues of material fact preventing summary judgment, but the evidence "demonstrate[d] that Defendant David Hoggatt, and Defendant SDI, consciously elevated their own economic interests above the safety of the Aegis employees and the public." The trial court granted the motion. Warner later filed a motion for reconsideration, arguing that, based on the testimony of two new witnesses, she "ha[d] produced significant evidence that Defendants utilized unlicensed, non-professional applicators . . . show[ing] complete indifference to or conscious disregard for the safety of others." Warner asked the court to

---

controlling statutes and Wilson's own deposition testimony established the standard of care applicable to him. The trial court did not discuss this argument in its ruling granting the motion to dismiss. Because we conclude the trial court erred when it granted the motion, we need not reach this argument.

[10]The court did not dismiss Wilson and Sierra Pest until August 7, and did not dismiss Hoggatt until August 29.

12

deny the motion for summary judgment, or "[at] a minimum, . . . delay ruling on th[e] issue until after all the evidence ha[d] been submitted."

¶22    Granting Warner's motion in part, the trial court agreed to reconsider its decision, and granted Warner leave to later request a punitive damages jury instruction. After the evidence relevant to punitive damages had been presented at trial, and in the context of discussing jury instructions with counsel, the court reconsidered the issue. Determining that punitive damages would not be appropriate, the court stated,

> it's going to be the order of the Court . . . denying the motion for reconsideration on the grounds and for the reason that the Court, at this stage, does not believe that the evidence has met the required burden or level for a punitive damages instruction, in that the Court cannot find that there is any extraordinary circumstances of conscious disregard for evil mind purposes by the Defendants, on the grounds and for the reason that the testimony does indicate that Mr. Hoggatt was the only one who was involved with the chemicals and there were no other discussions.

Accordingly, the court denied Warner's request for a jury instruction on punitive damages. *See Timmons v. City of Tucson*, 171 Ariz. 350, 355, 830 P.2d 871, 876 (App. 1991) (trial court instructs jury on legal theories supported by evidence).

¶23    Warner argues that, in making its decision, the trial court improperly "took it upon itself to weigh the evidence" by finding that no unlicensed workers were involved despite four witnesses' testimony to the contrary. She also contends that "[t]he use of untrained, unlicensed, non-professionals to provide services . . . appropriate only for a licensed applicator" would be sufficient grounds to justify punitive damages. Warner further argues that evidence presented at trial also showed that Hoggatt and/or SDI intentionally had

13

acted "outside the scope of authority, and contrary to the express directions, of their licensed qualifying party," justifying punitive damages. Warner asserts that because the court erred in its decision, a new trial is warranted. *See* Ariz. R. Civ. P. 50(d).

¶24 Punitive damages are only appropriate "'in the most egregious of cases, where [a plaintiff proves by clear and convincing evidence that the defendant engaged in] reprehensible conduct' and acted 'with an evil mind.'" *Medasys Acquisition Corp. v. SDMS, P.C.*, 203 Ariz. 420, ¶ 17, 55 P.3d 763, 767 (2002), *quoting Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-32, 723 P.2d 675, 680-81 (1986) (alteration in *Medasys*). Showing the requisite evil mind does not require evidence of a defendant's subjective intent to injure; it can be shown by evidence of the defendant's conscious disregard of "'a substantial risk of significant harm to others.'" *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, ¶ 38, 144 P.3d 519, 531 (App. 2006), *quoting Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986).

¶25 Because the trial court reconsidered its grant of the motion for summary judgment on the issue of punitive damages, delaying a final decision until after all relevant evidence had been presented at trial, we view the court's ruling as a judgment as a matter of law (JMOL).[11] *See* Ariz. R. Civ. P. 50(a). We therefore review the court's decision de novo. *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, ¶ 20, 92 P.3d 882, 890 (App. 2004). Like summary judgment, JMOL should only be granted if the evidence in support of a claim would

---

[11]Warner refers to the court's ruling as a directed verdict. As we have noted, this term is interchangeable with JMOL.

not allow reasonable people to agree with the conclusions of the claim's proponent. *Id*. ¶ 20; Ariz. R. Civ. P. 50(a). "In reviewing a ruling on a motion for JMOL, we view the facts" and all reasonable inferences therefrom "in the light most favorable to the party opposing it." *Crackel*, 208 Ariz. 252, ¶ 20, 92 P.3d at 889.

¶26     Although in deciding whether to grant JMOL a trial court may consider "'the quantum of evidence required'" by the applicable standard of proof, *id.*, *quoting Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990), the court should not grant JMOL "simply because [it] believes the moving party should win or will win the jury's verdict." *Potter v. H. Kern Wisner, M.D., P.C.*, 170 Ariz. 331, 333, 823 P.2d 1339, 1341 (App. 1991). Nonetheless, we need not address whether, as Warner asserts, the trial court improperly acted as a fact-finder regarding the presence of unlicensed applicators, because SDI's use of unlicensed applicators could not, as a matter of law, form the basis for a punitive damages claim against it. *See State v. Oakley*, 180 Ariz. 34, 36, 881 P.2d 366, 368 (App. 1994) ("We will affirm the trial court when it reaches the correct result even though it does so for the wrong reasons.").

¶27     First, in order for an employer to be liable for punitive damages, the alleged basis for punitive damages must spring from either (1) the employer's independent actions for which it is liable, or (2) the actions of its employee for which it is liable under the doctrine of respondeat superior. *See Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, ¶¶ 22-23, 31 P.3d 114, 119 (2001). Thus, for SDI's own actions, such as possibly having used unlicensed applicators, to form the basis for a punitive damages award, SDI must be independently liable

for negligence. *See id.* ¶ 23. However, it is unclear from Warner's complaint that she even alleged SDI was independently liable. Indeed, after the court granted summary judgment, finding Hoggatt had been negligent and that SDI was liable based on respondeat superior, Warner never claimed that SDI was independently liable as well. Because Warner had not alleged an independent basis for SDI's liability, SDI's own actions could not, as a matter of law, be grounds for punitive damages; rather, Warner's only avenue for punitive damages against SDI was by virtue of its respondeat superior liability, and thus must have been based on Hoggatt's actions. *See id.*

¶28 Furthermore, even if Warner had alleged SDI was independently liable, mere usage of unlicensed herbicide applicators cannot, as a matter of law, justify an award of punitive damages. Warner argues the use of unlicensed applicators can, without more, show the "conscious disregard" necessary to justify a punitive damages instruction. *See Tritschler*, 213 Ariz. 505, ¶ 38, 144 P.3d at 531. To support her assertion, Warner relies on several cases from other jurisdictions in which the defendant's use of unlicensed employees or entrustment of vehicles to unlicensed drivers, who later commit a tort, justifies an award of punitive damages against the defendant. *E.g. Snyder v. Enter. Rent-A-Car Co.*, 392 F. Supp. 2d 1116, 1129-30 (N.D. Cal. 2005) (denying defendant's motion for summary judgment on punitive damages claim because evidence defendant rented car to unlicensed driver sufficient to show conscious disregard of safety of others); *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 73-75 (Mo. 1990) (remanding for proper instructions on punitive damages award against optometry practice where unlicensed employee gave patient improper advice about contact

16

lens care), *overruled on other grounds by Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104 (Mo. 1996); *Deerings W. Nursing Ctr. v. Scott*, 787 S.W.2d 494, 496 (Tex. App. 1990) (defendant nursing home liable for punitive damages where it had hired unlicensed nurse who assaulted elderly visitor to nursing home).

¶29          We agree with Warner that the likely purpose of the licenses in those cases was, like here, public safety.  In those cases, however, it was illegal for an unlicensed person to perform the underlying activity. *See Snyder*, 392 F. Supp. 2d at 1120 (driving); *Menaugh*, 799 S.W.2d at 73 (optometry); *Deerings W. Nursing Ctr.*, 787 S.W.2d at 496 (nursing).  Despite Warner's assumption that the use of unlicensed herbicide applicators would be illegal, A.R.S. § 32-2312(F) allows companies to use unlicensed applicators so long as they "work under the direct supervision of a licensed applicator at all times."  "Direct supervision" merely requires that the unlicensed applicators work "under the instruction, control and responsibility of a licensed applicator who is available if needed for consultation or assistance even though the licensed applicator is not physically present at the time and place the [herb]icide is used."[12] A.R.S. § 32-2301(7).  Warner presented no evidence suggesting Hoggatt, SDI's licensed applicator, was unavailable, nor that any unlicensed workers SDI may have used were otherwise not under Hoggatt's "instruction, control and responsibility."[13] *Id*.  Without more,

---

[12]At oral argument, Warner asserted SDI's use of unlicenced applicators violated Arizona Administrative Code Title 4, Chapter 29, Article 5.  The version of Article 5 to which Warner refers, however, was not in effect at the time of the incident, and we find nothing in the administrative rules effective at that time that support Warner's position.

[13]Warner did present evidence suggesting that Hoggatt did not arrive at the Aegis building until after the herbicides had been applied and people had been evacuated; however,

the legal use of unlicensed herbicide applicators is not the type of "outrageous, oppressive or intolerable" conduct that would support an award of punitive damages. *Linthicum*, 150 Ariz. at 330, 723 P.2d at 679.

¶30 Warner next contends the court erred by denying her requested punitive damages instructions, and that she should have been able to pursue them against SDI, by virtue of its respondeat superior liability for Hoggatt's negligence, and against Hoggatt individually, because, she asserts, she presented facts tending to show that:

> Defendants' application at Aegis took place without any supervision or training from the qualifying party[,] . . . Defendant SDI's applicators blatantly ignored the scope of their authorization and instructions from the qualifying party, Robert Wilson, to only apply chemicals to right-of-ways and vacant lots[,] Defendants sprayed toxic chemicals around an occupied, commercial building although Defendants' applicators had only been provided simple training with respect to applications at vacant lots and right-of-ways, and . . . Defendants sprayed toxic chemicals without forewarning Aegis or the Aegis employees.

Indeed, viewed in the light most favorable to Warner, *see Crackel*, 208 Ariz. 252, ¶ 20, 92 P.3d at 889, the evidence establishes Hoggatt had no experience spraying around air conditioning units, Hoggatt was unaware of the air intakes at the Aegis building, Hoggatt knew some of the chemicals he used were "dangerous to inhale," Hoggatt's qualifying party never observed him spraying around buildings, Hoggatt agreed with his qualifying party that

---

this alone does not permit the inference that there was no "direct supervision," as its definition does not require the physical presence of the licensed applicator. A.R.S. § 32-2301(7). Furthermore, Hoggatt's liability, based on his admission that he negligently applied the herbicide at the Aegis building, had already been determined.

he would only spray vacant lots and rights of way, and Hoggatt sprayed the Aegis building without informing his qualifying party.

¶31 Even if a jury were to find these facts, however, they do not alone permit the inference that Hoggatt knew his actions posed "'a substantial risk of significant harm to others.'" *Tritschler*, 213 Ariz. 505, ¶ 38, 144 P.3d at 531, *quoting Rawlings*, 151 Ariz. at 162, 726 P.2d at 578. "[A] damage award, punitive or otherwise, must be based on more than mere speculation or conjecture." *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 501, 733 P.2d 1073, 1084 (1987). Although these facts may show Hoggatt was negligent, they do not permit the jury to infer the evil mind necessary for a punitive damages award. *See Rawlings*, 151 Ariz. at 162, 726 P.2d at 578 (punitive damages require more than the "'mere commission of a tort'"), *quoting* W. Prosser & W. Keeton, *Law of Torts* § 2 at 9 (5th ed. 1984).

¶32 For all the aforementioned reasons, we affirm the trial court's JMOL on the issue of punitive damages against SDI and Hoggatt.

Evidence of Workers' Compensation Benefits and Lien

¶33 Warner next asserts the trial court erred by granting SDI's motion in limine seeking to prohibit Warner from presenting evidence of workers' compensation benefits she had received and of the lien held by her workers' compensation carrier against any recovery she might obtain. *See* A.R.S. § 23-1023(D).[14] We review a trial court's decision on a motion

---

[14]At the time this case was filed, this provision was in § 23-1023(C). *See* 2007 Ariz. Sess. Laws ch. 116, § 1.

19

in limine for an abuse of discretion. *See Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 396, 825 P.2d 5, 17 (1992).

¶34 Warner asserts that either the collateral source rule does not apply to workers' compensation benefits or, alternatively, she should have been permitted to waive the collateral source rule. "[T]he collateral source rule requires that[] '[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.'" *Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 519, 637 P.2d 726, 729 (1981), *quoting* Restatement (Second) of Torts § 920A(2) (1979). Thus, Warner reasons, if she waives the rule or it does not apply, she should have been permitted to present evidence of her receipt of workers' compensation benefits and the carrier's corresponding lien.

¶35 We find no support in Arizona law for Warner's position that the collateral source rule "has been abolished with respect to work[ers'] compensation benefit payments and liens." She relies on *Anderson v. Muniz*, 21 Ariz. App. 25, 28-29, 515 P.2d 52, 55-56 (1973), but that case did not analyze the collateral source rule; it held that a plaintiff's damages for medical expenses are calculated according to the rates actually charged by his doctor, not the higher rates the doctor would have charged absent a contract with the insurer. She also relies on *Eastin v. Broomfield*, 116 Ariz. 576, 584, 570 P.2d 744, 752 (1977), in which our supreme court stated: "We believe that the legislature has the right to abolish the collateral source rule as it affects medical malpractice cases just as it has done in the work[ers'] compensation field." The supreme court in *Eastin* relied on *Ruth v. Industrial Commission*, 107 Ariz. 572,

20

490 P.2d 828 (1971). That case, however, upheld the constitutionality of the workers' compensation carrier lien provision of § 12-1023. *Ruth*, 107 Ariz. at 576, 490 P.2d at 832. It does not address whether presenting evidence in a tort action of the plaintiff's receipt of workers' compensation benefits would violate the collateral source rule.

¶36 Moreover, even if the collateral source rule does not apply or can be waived, the evidence Warner seeks to admit must otherwise be admissible. The trial court here determined the evidence was irrelevant and could "prejudice . . . both parties." The court also expressed concern that evidence of the amount of the carrier's lien might inappropriately set a floor for the jury's calculation of damages. *See* Ariz. R. Evid. 402 ("Evidence which is not relevant is not admissible."); Ariz. R. Evid. 403 ("[Relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .").

¶37 Evidence that a plaintiff received workers' compensation benefits is generally inadmissible because it is irrelevant to the issue of the plaintiff's damages. *See Miller v. Schafer*, 102 Ariz. 457, 458, 432 P.2d 585, 586 (1967) ("[I]t would seem to be clear that [the existence of workers' compensation coverage] is irrelevant and that it is improper to introduce it with no apparent purpose other than to influence the jury."). It follows that evidence of a workers' compensation carrier's statutory lien against a plaintiff's recovery is similarly irrelevant. Moreover, juries are frequently instructed not to consider the possible existence of insurance in reaching its verdict. *See* State Bar of Arizona *Revised Arizona Jury Instructions (Civil)* Std. 9 (2005) ("In reaching your verdict, you should not consider (or

21

discuss) whether a party was or was not covered by insurance. Insurance or the lack of insurance has no bearing on whether or not a party was at fault, or the damages, if any, a party has suffered."). Further, evidence that a party is insured is typically inadmissible. *See* Ariz. R. Evid. 411. And, although the jury instructions the trial court gave here are not included in the record on appeal, both Warner and SDI requested the standard instruction, which the court stated it would give.

¶38 Warner also asserts that our supreme court's decision in *Manhattan-Dickman Construction Co. v. Shawler*, 113 Ariz. 549, 558 P.2d 894 (1976), "dictates that an instruction and evidence regarding a worker[s'] compensation lien are mandatory when the jury is led to believe that worker[s'] compensation has been provided to a plaintiff." In that case, the attorneys for the defendants in a negligence action "inject[ed] and continuously emphasiz[ed] work[ers'] compensation" during jury selection and the examination of witnesses. *Id.* at 556-57, 558 P.2d at 901-02. The trial court declined to give an instruction regarding the workers' compensation carrier's statutory lien on the plaintiff's recovery. *Id.* at 557, 558 P.2d at 902. Relying on *Miller*, the supreme court determined the court's failure to instruct the jury was error and directed the court to enter additurs for the plaintiffs. *Manhattan-Dickman*, 113 Ariz. at 557, 558 P.2d at 902.

¶39 *Manhattan-Dickman* does not support Warner's position. Indeed, it reemphasizes that evidence of workers' compensation benefits and liens are generally irrelevant and prejudicial. It suggests that if such evidence is heard by the jury, the jury should then be specifically instructed to disregard it. Warner does not claim the trial court

22

erred by failing to specifically instruct the jury that her carrier had a lien on her recovery or to ignore the possibility Warner had received workers' compensation benefits. And, as we have noted, the jury likely was instructed to ignore the possibility of any insurance. Accordingly, for all these reasons, we conclude the court did not abuse its discretion in granting SDI's motion in limine.

Jury Questions

¶40 Warner next asserts the trial court erred by declining to answer questions the jury posed during the trial. Rule 39(b)(10), Ariz. R. Civ. P., states:

> Jurors shall be permitted to submit to the court written questions directed to witnesses or to the court. Opportunity shall be given to counsel to object to such questions out of the presence of the jury. Notwithstanding the foregoing, for good cause the court may prohibit or limit the submission of questions to witnesses.

We review for an abuse of discretion a trial court's decision whether to submit a juror's question for answer. *See Harrington v. Beauchamp Enters*., 158 Ariz. 118, 121, 761 P.2d 1022, 1025 (1988).

¶41 On the third day of trial, the trial court informed the parties a juror had asked: "[D]id the defendant violate any pesticide or herbicide regulation in their treatment at Aegis on September 29th, 2003?" It is not clear from the record whether the question was directed to a particular witness or to the court, although the discussion of the question followed Hoggatt's testimony. Warner argued Hoggatt could answer the question, and SDI argued the question was irrelevant and unfairly prejudicial because SDI and Hoggatt had admitted negligence. The court ultimately determined the question would not be answered "because

23

of the fact that [Hoggatt's citation from the Structural Pest Control Commission (SPCC)] was a settlement" between Hoggatt and the SPCC.[15] The court then instructed the jury that "the rules of evidence or other rules of law may prevent some questions from being asked or fully answered" and advised the jury "that to the extent possible, we have attempted to answer that question."

¶42 Warner argues that, because the question demonstrates the jury was "confus[ed]" and "need[ed] more information to render a verdict," the trial court erred by declining to answer the question. She relies on *Harrington*, in which our supreme court stated: "'[A] number of courts have held that if the jurors . . . express confusion or lack of understanding of a significant element of the applicable law, it is the court's duty to give additional instructions on the law to adequately clarify the jury's doubt or confusion.'" 158 Ariz. at 121, 761 P.2d at 1025, *quoting Ott v. Samaritan Health Serv.*, 127 Ariz. 485, 491, 622 P.2d 44, 50 (App. 1980) (alterations in *Harrington*).

¶43 In *Harrington*, a negligence and products liability case, *id.* at 119, 761 P.2d at 1023, the jury asked a question during deliberations concerning the statute of limitations, *id.* at 120, 761 P.2d at 1024. Apparently, a contract entered into evidence contained a one-year workmanship warranty. *Id.* The jury asked the trial court: "How many years [is] a contractor

---

[15]Hoggatt signed a consent agreement with SPCC agreeing to pay a $600 fine. That consent agreement stated: "The disciplinary action in this matter constitutes a prior violation and may be used for the purpose of determining sanctions in any further disciplinary matter, however it shall not act as conclusive evidence of a violation in any other proceeding." The trial court had previously granted SDI's and Hoggatt's motion in limine to exclude evidence of the consent agreement.

liable for defects in workmanship and materials . . . [?] Contract reads one year. We want to know if another law forgoes [the] contract." *Id.* The trial court provided no clarifying instruction, and the jury returned a verdict for the defense. *Id.* Noting that "[n]o limitations period, statutory or contractual, was at issue in the trial," *id.*, our supreme court determined the trial court had erred by failing to respond to the jury's question, *id.* at 121, 761 P.2d at 1025.

¶44 The juror's question here does not evidence a similar lack of understanding of any portion of this case. Evidence of Hoggatt's citation from the SPCC, even if otherwise admissible, would be relevant only to the issue of Hoggatt's negligence—which was not contested at trial.[16] Moreover, the court in *Harrington* addressed a question asked by the jury during deliberations. *Id.* at 120, 761 P.2d at 1024. Here, in contrast, the trial court declined to answer a question asked by an individual juror before deliberations. A question by a single juror during the course of trial is substantially less indicative of jury confusion than a question asked by the jury panel during deliberations. *Cf. Cannon v. State*, 496 S.E.2d 330, 332 (Ga. Ct. App. 1998) (question by single juror "[might] not denote 'confusion' of the entire jury"). Thus, we conclude the court did not abuse its discretion in declining to answer the juror's question.

¶45 On the fourth day of trial, the court informed the parties it had received three additional jury questions, which apparently were intended for Warner. One question asked

---

[16]Warner asserts the question was "obviously relevant," but cites no authority in support of her position. Nor does she explain how the evidence would be relevant to any issue save Hoggatt's negligence.

whether Warner had made a claim for workers' compensation benefits or qualified for disability social security insurance. The second question asked whether Warner had medical insurance while employed with Aegis and whether that insurance covered prescription drugs. The final question the jury asked was whether any other lawsuits had been filed. The next day of trial, the court informed the parties it would explain to the jury that "all the questions the Court deemed it could legally answer" had been answered, and that it would not address any of those questions.

¶46    Although we do not find any indication in the record the trial court actually gave that explanation to the jury, Warner nevertheless did not ask the court to answer the questions or order they be answered. Nor did she suggest any additional jury instructions were required. Accordingly, she has waived this issue on appeal, and we do not address it further. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("[E]rrors not raised in the trial court cannot be raised on appeal.").

Rule 68 Sanctions

¶47    The trial court granted Hoggatt's, Wilson's, and Sierra Pest's motions for sanctions pursuant to Rule 68, Ariz. R. Civ. P., because they had been dismissed from the lawsuit and had made offers of judgment to Warner.[17] *See* footnote 3, *supra*. And, because the jury's $3,825 damage award to Warner's was less than SDI's $30,000 offer of judgment, the court also granted SDI's motion for Rule 68 sanctions. Because the court erred by

_____

[17]Effective January 1, 2008, Rule 68(g), Ariz. R. Civ. P., provides for offer-of-judgment sanctions. At the time relevant here, however, these provisions were contained in Rule 68(d).

dismissing Hoggatt, Wilson, and Sierra Pest, we vacate the award of Rule 68 sanctions to those parties. Therefore, we need not address Warner's argument those offers were not made in good faith.

**¶48**     Warner argues we should vacate the Rule 68 sanctions awarded to SDI because she lacked the authority to accept the offer in light of the fact that she had received workers' compensation benefits and the carrier had a lien to that extent against any recovery pursuant to A.R.S. § 23-1023. At the time relevant here, § 23-1023(C) provided that "[c]ompromise of any claim by the employee . . . at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of . . . the person liable to pay the claim."[18] 1981 Ariz. Sess. Laws, ch. 226, § 1. The carrier's lien of approximately $60,000 clearly exceeded SDI's $30,000 offer of judgment and thus required Warner to seek the carrier's approval before she could accept that offer.

**¶49**     "Interpretation of rules and statutes is a legal matter, which we review de novo." *Pima County v. Pima County Law Enforcement Merit Sys. Council*, 211 Ariz. 224, ¶ 13, 119 P.3d 1027, 1030 (2005). And we "subject court rules to the principles of statutory construction." *State ex rel. Romley v. Superior Court*, 168 Ariz. 167, 168, 812 P.2d 985, 986 (1991). The primary goal of construing a court rule "is to discern and give effect" to the intent of the rule. *Bridgestone/Firestone N. Am. Tire, L.L.C. v. A.P.S. Rent-A-Car & Leasing Inc.*, 207 Ariz. 502, ¶ 15, 88 P.3d 572, 576 (App. 2004), *quoting State v. Kearney*, 206 Ariz. 547, ¶ 5, 81 P.3d 338, 340 (App. 2003). We begin with the language of the rule.

---

[18]These provisions are now in § 23-1023(D).

**¶50**     At the time relevant here, Rule 68(d) provided that, if an offer of judgment is made and not accepted and "[i]f the judgment finally obtained is equal to, or more favorable to the offeror than[] the offer, the offeree must pay, as a sanction, those reasonable expert witness fees and double the taxable costs of the offeror . . . ."  SDI asserts we must uphold the sanction here because "[t]here is no exception to Rule 68 awards of sanctions for offerees who reject offers of judgment when there is a lien subject to A.R.S. § 23-1023(C)."

**¶51**     Our decision, however, does not hinge on whether there is an explicit exception to Rule 68 sanctions for parties whose recovery is subject to a § 23-1023 lien.  "[W]hat a [court rule] necessarily implies is as much a part of the [rule] as what is explicitly stated." *Long v. Napolitano*, 203 Ariz. 247, ¶ 44, 53 P.3d 172, 185 (App. 2002).  Rule 68 necessarily implies that an offeree must have the legal ability to accept an offer before sanctions may be imposed.  Unlike other fee-shifting and cost-shifting rules and statutes, Rule 68 is a sanction. *See generally* A.R.S. §§ 12-341, 12-341.01, 12-343; Ariz. R. Civ. P. 54(f), (g).  A sanction is by definition punitive or coercive in nature. *See Black's Law Dictionary* 1368 (8th ed. 2004) (a sanction is "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order").  Therefore, due process demands that, before a party may properly be sanctioned, it must have had the ability to avoid that sanction. *Cf. Shillitani v. United States*, 384 U.S. 364, 371 (1966) ("[T]he justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order."); *Korman v. Strick*, 133 Ariz. 471, 474, 652 P.2d 544, 547 (1982) ("If the means of the coercion

28

[to comply with a court order] . . . cannot be removed by compliance with the court's order, the coercive effect of a civil contempt finding will be weakened.").

¶52 SDI suggests Warner could have avoided the sanction by not filing a lawsuit. The purpose of Rule 68 sanctions, however, is not to prevent a party from filing a meritorious lawsuit, but rather to promote its settlement. *See Wersch v. Radnor/Landgrant-a Phoenix P'ship*, 192 Ariz. 99, 102, 961 P.2d 1047, 1050 (App. 1997). That purpose is not met by preventing a party from seeking a remedy at all or by punishing it for failing to accept an offer of settlement it had no ability to accept.

¶53 In *Duke v. Cochise County*, 189 Ariz. 35, 40-41, 938 P.2d 84, 89-90 (App. 1996), we held that imposition of Rule 68 sanctions cannot be based on an unapportioned joint offer of settlement from multiple parties. Although we relied primarily on the rule's language specifying only a single "party" and "offer," we also stated:

> An offeree presented with an unapportioned joint offer cannot make a meaningful choice between accepting the offer on any single claim or continuing the litigation to judgment on all claims. Imposing sanctions for failing to accept what is in effect an unspecified and unapportioned offer of judgment deprives the offeree of the opportunity to assess his or her chances of doing better at trial against one or more of the parties covered by the joint offer.

*Id.* at 41, 938 P.2d at 90. Albeit on different facts, in *Duke* we recognized that it is not proper to sanction a party when that party has no meaningful opportunity to avoid the sanction. When a party is unable, due to a § 23-1023 lien, to accept an offer of judgment that it would

have otherwise accepted, that party cannot make a meaningful choice—it has been forced to proceed with litigation it intended to end by accepting the defendant's offer of judgment.[19]

¶54        In order to avoid Rule 68 sanctions, however, it is not enough for a plaintiff to have merely notified the lien holder of a defendant's offer to confess judgment. Section 23-1023 does not discuss a notice requirement, but rather requires the plaintiff to obtain written approval from the lien holder before compromising his or her claim in an amount less than the lien. It is therefore necessary for the plaintiff seeking protection from Rule 68 sanctions to demonstrate that it timely sought approval for an offer of judgment that it intended to accept. Otherwise, a plaintiff could avoid Rule 68 sanctions when it had no intention of accepting an offer of judgment and, consequently, was not actually denied a meaningful choice between accepting the offer or proceeding with the action. *See Duke*, 189 Ariz. at 41, 938 P.2d at 90. Accordingly, if Warner intended to accept SDI's offer of judgment, requested permission from the lien holder to do so, and the lien holder refused, the trial court's Rule 68 sanctions against Warner were not proper.[20]

---

[19]SDI argues this reading of Rule 68 creates a conflict between the rule and § 23-1023, and, thus, the rule should control. *See Pima County v. Hogan*, 197 Ariz. 138, ¶ 8, 3 P.3d 1058, 1060 (App. 1999) ("When a statute conflicts with a procedural rule on a procedural matter, the rule controls."). It does not explain, however, how the rule and statute conflict. As we have explained, a party may not be sanctioned under Rule 68 when a party lacks the ability to accept an offer of judgment. That § 23-1023 may prevent a party from accepting an offer of judgment does not create a conflict, it merely means sanctions may be unavailable.

[20]At oral argument before this court, SDI argued for the first time that acceptance of an offer of judgment under Rule 68 was not a "compromise" as contemplated by § 23-1023. It reasons that a settlement, unlike acceptance of a Rule 68 offer, need not result in a judgment and involves contract law principles to govern its effect. *See, e.g., Emmons v.*

¶55 Were we to conclude that a workers' compensation lien holder's refusal of the worker-plaintiff's request to accept an offer of judgment did not insulate a plaintiff from Rule 68 sanctions, a plaintiff in a third-party action whose recovery was subject to a § 23-1023 lien would have but two options, both inconsistent with public policy. As we explain below, a plaintiff could continue to litigate the case, and, in the event Rule 68 sanctions were imposed, he or she might have a cause of action against the lien holder based on a bad faith refusal to permit acceptance of the offer of judgment. Or the plaintiff could accept the offer of judgment without the lien holder's approval, in violation of § 23-1023, thereby subjecting him or her to potential penalties if the amount of the lien exceeds the judgment.

¶56 In Arizona, a plaintiff may bring an action against a workers' compensation lien holder for violating the duty of good faith and fair dealing by unreasonably withholding

---

*Superior Court*, 192 Ariz. 509, ¶ 14, 968 P.2d 582, 585 (App. 1998) ("Construction and enforcement of settlement agreements . . . are governed by general contract principles."); *Haberkorn v. Chrysler Corp.*, 533 N.W.2d 373, 385 (Mich. Ct. App. 1995) ("An offer of judgment is not the same as an offer to settle. An agreement to settle does not necessarily result in a judgment. Although it usually results in a stipulated order of dismissal with prejudice, such an order does not constitute an adjudication on the merits."). Although settlement offers and Rule 68 offers of judgment are distinguishable, that fact does not support SDI's contention that an offer of judgment is not a "compromise." Our supreme court has defined a compromise under § 23-1023 as an "'agreement between two or more persons who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent in the manner which they agree on.'" *Hendrickson v. Indus. Comm'n*, 202 Ariz. 442, ¶ 17, 46 P.3d 1063, 1066 (2002), *quoting Brecht v. Hammons*, 35 Ariz. 383, 389, 278 P. 381, 383 (1929). A Rule 68 judgment squarely fits this definition—the parties ultimately compromise by agreeing on the value of the plaintiff's claim by one party's accepting the other's offer to confess judgment.

31

approval of a settlement between an employee and a third-party defendant. *See, e.g., Stout v. State Comp. Fund*, 197 Ariz. 238, 242-43, 3 P.3d 1158, 1162-63 (App. 2000); *Boy v. Fremont Indem. Co.*, 154 Ariz. 334, 336-37, 742 P.2d 835, 837-38 (App. 1987). A plaintiff who requests and is refused permission to accept an offer of judgment and later is sanctioned under Rule 68 could file such an action against the lien holder. Therefore, he or she could potentially obtain some relief from the Rule 68 sanctions. This solution has some facial appeal—it would allow a defendant to recover costs that it would have been able to recover from a plaintiff who voluntarily rejected a Rule 68 offer of judgment. And it would place some potential burden on the insurance carrier which, perhaps unfairly, stands to benefit from the plaintiff's lawsuit against a third party without shouldering any of the accompanying risks or costs of litigation. *Cf. Colorado Counties, Inc. v. Davis*, 801 P.2d 10, 12 (Colo. Ct. App. 1990) ("It would be fundamentally unfair and unjustly enrich [a workers' compensation carrier] for plaintiff to pay all of the expenses and bear the risk of the litigation [against a third party] but at the same time to absolve [the carrier] of all costs incurred.").

¶57 Ultimately, however, that procedure is at odds with public policy. As we have noted, the purpose of Rule 68 is to encourage settlement and eliminate needless litigation. *See Wersch*, 192 Ariz. at 102, 961 P.2d at 1050. That purpose is not met by encouraging, and perhaps requiring, collateral litigation to determine whether a lien holder's refusal to approve a desired settlement was in good faith. Nor is the lien holder's lack of good faith the central concern—as we explained above, the issue under Rule 68 is instead whether the plaintiff had a meaningful opportunity to decide whether to accept the offer. *See Duke*, 189 Ariz. at 41,

32

938 P.2d at 90. Moreover, public policy in the area of tort law generally favors the injured party, not the tortfeasor. *See, e.g., Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, ¶ 26, 129 P.3d 487, 496 (App. 2006) ("[T]wo guiding principles of tort law [are] (1) the limitation of compensation to the injured party to the amount necessary to make him whole and (2) the avoidance of a windfall to the tortfeasor if a choice must be made between him and the injured party.").

¶58        Nor would it be a satisfactory solution to require a plaintiff who desires to settle his or her claim to avoid potential Rule 68 sanctions by settling the claim without the lien holder's approval. Although § 23-1023 does not describe a penalty for failing to obtain the lien holder's approval before settling, our case law makes it clear that a plaintiff may suffer significant consequences if he or she does so. If a workers' compensation claimant settles his or her third-party claim without the lien holder's approval, the claimant must demonstrate that the settlement was reasonable. *Hendrickson v. Indus. Comm'n*, 202 Ariz. 442, ¶ 13, 46 P.3d 1063, 1066 (2002); *Bohn v. Indus. Comm'n*, 196 Ariz. 424, ¶ 17, 999 P.2d 180, 183 (2000). If he or she does so, the lien holder's credit "shall be the amount of the actual settlement." *Bohn*, 196 Ariz. 424, ¶ 17, 999 P.2d at 183. If the amount of the settlement is found to be unreasonable, however, the credit "shall be enlarged to a reasonable settlement amount." *Id.* Indeed, in some circumstances, the lien holder may be permitted to deny all future workers' compensation benefits to the claimant for accepting the settlement without the lien holder's permission. *See id.* (claimant who settles with third party after carrier "has accepted the claim, paid benefits, and acquired a lien" forfeits workers' compensation benefits); *see also*

*Hendrickson*, 202 Ariz. 442, ¶ 15, 46 P.3d at 1066 (declining to apply forfeiture rule where claimant settled claim after benefits paid because claimant "did not . . . attempt to reopen her compensation claim" after settling third-party action and received "minimal amount from her third-party action"). Additionally, our supreme court noted in *Hendrickson* that its

> holding . . . emphatically does not alter the duty of a workers' compensation claimant or his attorney to comply with section 23-1023.C and seek written approval prior to compromising a third-party claim. The fact that a claimant may suffer no financial impact from disregarding the direction of the statute does not lessen his lawyer's obligation to follow the law as set out in section 23-1023.C.

202 Ariz. 442, ¶ 19, 46 P.3d at 1067.

¶59 The decision we reach today does not weaken the protection Rule 68 may afford a defendant. If not for a lien holder's withholding approval, a plaintiff would be in a position to settle the claim. Moreover, to hold otherwise would subject a plaintiff with a meritorious claim to sanctions he or she had no ability to avoid and would protect the tortfeasor to the injured party's detriment. And it would engender further litigation between the plaintiff and the lien holder on either the lien holder's good faith in rejecting the settlement offer or the reasonableness of the claimant's acceptance of that offer.

¶60 Our conclusion, however, does not end the inquiry. SDI contends that "there is absolutely no evidence in the record, or otherwise, that after receiving the appellee's October of 2005 offers of judgment, . . . [Warner] even asked the compensation carrier whether she had approval to accept the offers." In her response to the motions for Rule 68 sanctions, however, Warner asserted to the trial court that the carrier "had indicated to [her]

that it was unwilling to compromise its lien in any way." But she did not indicate whether, intending to accept the offer of judgment, she had requested from the carrier permission to accept SDI's offer to confess judgment and, if so, whether and when the carrier had informed her it was unwilling to compromise its lien. Under the standard we describe, Warner has clearly not met her burden.

¶61 Because "this is a case of first impression," however, and because it would be unfair to have expected the parties or the trial court to have anticipated the standard we adopt today, "we think justice will be best served by allowing the parties the opportunity of presenting any additional evidence relevant to [this] issue." *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 261, 413 P.2d 732, 739 (1966), *overruled on other grounds by N. Propane Gas Co. v. Kipps*, 127 Ariz. 522, 527, 622 P.2d 469, 474 (1980); *see also Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996) (where supreme court "has clarified [the] burden of proof . . . and decided an issue of first impression whose resolution was not clearly foreshadowed," fairness demands court remand case to provide plaintiff opportunity to present additional evidence). We therefore vacate the trial court's award of Rule 68 sanctions to SDI and remand this matter to the trial court so it can determine whether Warner can demonstrate that she intended to accept the offer and had not been given permission to settle the claim before the time to accept the offer of judgment would have expired. *See* Ariz. R. Civ. P. 68(h); *cf. Fleitz v. Van Westrienen*, 114 Ariz. 246, 252, 560 P.2d 430, 436 (App. 1977) (once defendant met "burden of coming forward with evidence" showing it "made an offer of

judgment greater than the verdict," "the burden shifted to [plaintiff] to show the . . . offer was in fact for something less").

## Disposition

**¶62** We affirm the trial court's denial of Warner's punitive damage claim against Hoggatt and SDI. We reverse the court's dismissal of Warner's action as to Hoggatt, Wilson, and Sierra Pest, as well as its award of costs pursuant to § 12-341. And we reverse the court's award of Rule 68 sanctions against Warner in favor of Hoggatt, Wilson, Sierra Pest, and SDI. We also remand the case to the trial court for further proceedings as to Warner's liability to SDI for Rule 68 sanctions, and such other proceedings regarding Wilson and Sierra Pest as are consistent with this decision.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
JOSEPH W. HOWARD, Presiding Judge