HUGHES *v.* LEE

5-3348 383 S. W. 2d 97

Opinion delivered October 26, 1964.

548

*Bob Scott,* for appellant.

*Clayton Little,* for appellee.

GEORGE ROSE SMITH, J. In September of 1962 the appellant, Jennie Hughes, entered into a contract with C. J. Harter and his wife for the exchange of a motel that Mrs. Hughes owned in Texas and a 680-acre farm that the Harters owned in Benton county, Arkansas. Mrs. Hughes was represented in the transaction by the appellee, Carl W. Lee, a Bentonville real estate broker, who was to receive a commission of $5,000 for his services. The parties to the exchange deposited their respective deeds with Lee pending the complete performance of their contract.

This suit was brought by Mrs. Hughes to compel Lee to surrender possession of the deed that he was holding for her. By counterclaim Lee sought judgment for the unpaid sum due upon a promissory note that Mrs. Hughes had given him for his commission. The only disputed questions that now remain in the case are, first, the exact amount of the balance that is owed by Mrs. Hughes upon her note, and, second, her liability for a 10 per cent attorney's fee upon the note.

The first issue—the amount due upon the note—requires us to determine, upon conflicting testimony, the true terms of an oral agreement by which Mrs. Hughes and Lee agreed to dispose of the proceeds resulting from the sale of the crops that were growing on the Harter farm when Mrs. Hughes acquired it. (Upon this issue the appellant invokes the parol evidence rule, but at the trial both litigants so fully developed the testimony about

the oral agreement that we think it plain that the application of the rule was waived.)

Lee acted as the intermediary in negotiating the exchange contract in September, 1962. At that time the Harter farm was subject to a mortgage upon which a $2,000 payment would fall due on the following January 1. Both the contracting parties were worried about this payment. Lee testified that Mrs. Hughes told him that she couldn't make the trade if she had to make this payment. According to Lee he discussed the matter with Harter, who said that "he hadn't got a dime" and that "if I have to pay the $2,000 I can't—I'll have to keep the crops." This impasse threatened to stalemate the negotiations and evidently jeopardized Lee's hope of receiving a commission.

Lee testified in effect that he solved the problem by relieving Harter of any obligation to make the $2,000 payment, by taking from Harter a bill of sale for the crops, and by orally agreeing with Mrs. Hughes that he (Lee) would assume equal responsibility with her for the $2,000 payment. According to Lee he discharged his entire obligation to Mrs. Hughes by endorsing a $1,000 credit upon her promissory note.

Mrs. Hughes disputes Lee's version of their oral agreement. She says that Lee assured her the growing crops were worth at least $2,000 and that he agreed to take *half* the crops in return for assuming half the January payment to the mortgagee. Harter corroborates Mrs. Hughes to some extent, saying that he had thought the crops would prove to be worth $2,000.

Mrs. Hughes duly made the payment to the mortgagee. The crops were sold, but, perhaps in part because they were harvested later than they should have been, they brought net proceeds of only $1,195.30. Lee contended in the court below that he was entitled to keep the entire proceeds of sale, since he had given Mrs. Hughes a credit of $1,000 upon her note. The chancellor held, however, that Lee should surrender his profit of $195.30, because as an agent he was also a fiduciary.

We do not think the chancellor went quite far enough in affording relief to Mrs. Hughes. It is implicit in Lee's own testimony that he broke the deadlock in the negotiations by incurring a personal financial risk. Yet, according to him, he assumed a $1,000 obligation in return for the *full* ownership of crops that both Harter and Mrs. Hughes (and, we think, Lee himself) thought to be worth $2,000. Thus under Lee's version of the oral agreement he took almost no risk and stood to reap a fairly certain profit. Even under the chancellor's decision the entire loss falls on Mrs. Hughes. In our view the weight of the evidence supports Mrs. Hughes' statement that she and Lee assumed equal responsibility for the $2,000 payment in return for equal ownership of the crops. Since the crops brought $1,195.30 Mrs. Hughes must be credited with half that amount instead of with the profit of $195.30 only. This modification will also proportionately reduce the attorney's fee allowed to Lee.

Mrs. Hughes' promissory note contained a provision for a reasonable attorney's fee of not more than 10 per cent of the amount due, if the note should be placed in the hands of an attorney for collection. Such a provision is valid. Ark. Stat. Ann. § 68-910 (Repl. 1957); *Hollaway* v. *Pocahontas Fed. Sav. & Loan Assn.*, 230 Ark. 310, 323 S. W. 2d 204. There is no merit in the appellant's contention that the fee ought to be disallowed because the amount of Mrs. Hughes' maximum possible liability upon the note was deposited in court while the case was pending. The deposit was made simply to enable Mrs. Hughes to obtain an immediate delivery of the deed that Lee was holding in escrow. In making the deposit Mrs. Hughes did not admit liability for its amount. To the contrary, she denied that she owed more than $850 to Lee. The services of Lee's attorneys were necessary to win the judgment he has obtained.

It is argued that Lee's failure to recover the full amount sued for should prevent the allowance of counsel fees. That is the rule under the statute governing actions upon insurance policies, but that statute requires that the demand for the full amount be successfully maintained in

the action. Ark. Stat. Ann. § 66-514 (Repl. 1957); *Pacific Mut. Life Ins. Co.* v. *Carter,* 92 Ark. 378, 123 S. W. 764. Moreover, that act allows a penalty in addition to the fee; so the statute is highly penal. *LaSalle Fire Ins. Co.* v. *Jenkins,* 185 Ark. 484, 47 S. W. 2d 792. By contrast, the statute governing this case merely provides for a reasonable fee, not to exceed 10 per cent of the amount due, for services actually rendered. § 68-910, *supra.* In this instance a 10 per cent fee appears to be reasonable. We perceive no sound basis for refusing to enforce the parties' contract for such a fee.

With the indicated modification the decree is affirmed. The cause will be remanded for the entry of a decree conforming to this opinion. The costs of this appeal will be borne equally by the parties.