432 P.2d 585

**George Alfred MILLER and City of Phoenix, a municipal corporation, Appellants,**

v.

**Joseph Hugh SCHAFER, Appellee.**

No. 8098.

Supreme Court of Arizona.

In Division.

Oct. 13, 1967.

Rehearing Denied Nov. 21, 1967.

Hughes & Hughes, by John C. Hughes, Phoenix, for appellant Miller.

Patrick E. Burke, Asst. City Atty., Phoenix, for appellant City of Phoenix.

McKesson, Renaud & Cook, by J. Gordon Cook, Phoenix, for appellee.

McFARLAND, Vice Chief Justice:

■ Appellant, George Alfred Miller, hereinafter designated plaintiff, brought an action to recover for injuries received in an automobile accident. Appellee, hereinafter designated defendant, was approaching plaintiff's car from the opposite direction when he turned left in front of plaintiff. The jury found for the defendant, and plaintiff has appealed. Since there was evidence that the plaintiff was exceeding the speed limit at the time of the accident, and since on appeal we must take the evidence in the light most favorable towards upholding the jury verdict, we cannot agree with plaintiff's assignment of error that the verdict was not justified by the evidence.

Plaintiff, however, assigns eight other errors, all of which boil down to the complaint that it was reversible error on the part of the trial court to permit the defendant to inform the jury, by his questioning of plaintiff's doctor, that the plaintiff was covered by workmen's compensation insurance. Appellant claims that this procedure was prejudicial because it might have led the jury to believe that the plaintiff ought not to be permitted to recover because he had already collected compensation for his injuries.

■ In Arizona, as in most states, it is settled that it is improper to call the jury's attention to the fact that the defendant carries liability insurance. Di Pietruntonio v. Superior Court, 84 Ariz. 291, 327 P.2d 746. Under no circumstances would such evidence be admissible when its relevance was not shown. Muehlebach v. Mercer Mortuary and Chapel, Inc., 93 Ariz. 60, 378 P.2d 741.

■ Applying this principle to cases where the insurance coverage is for workmen's compensation, it would seem to be clear that such coverage is irrelevant and that it is improper to introduce it with no apparent purpose other than to influence the jury.

"The defendant will ordinarily be unable to disclose to the jury that plaintiff has made a third party election; nor will defense counsel be able to argue that should they find for the defendant, plaintiff will still receive a compensation award, for these matters do not concern and are of no benefit to the third party." Udall—Alternative Remedies for Industrial Injuries, Sec. 12, citing Borrow v. El Dorado Lodge, 75 Ariz. 139, 252 P.2d 791.

"The general rule is that it is improper to bring before a jury information regarding the injured plaintiff's right to workmen's compensation benefits. * * * The rule is based * * * on the assumption that knowledge of that fact will more likely than not influence the jury against the plaintiff on the issues of liability and damages." Ridgway v. North Star Terminal and Stevedoring Co. (Alaska 1963) 378 P.2d 647.

■ We conclude, therefore, that the injection of evidence tending to show the existence of workmen's compensation insurance into this case was error. The courts are divided on the question of whether it is *reversible* error. For an excellent collection of cases on this subject, see 77 A.L.R.2d 1154.

"Generally, the introduction of information showing or tending to show the jury that the plaintiff is entitled to workmen's compensation benefits has been held to constitute prejudicial error necessitating a reversal or new trial. * * *" 77 A.L.R.2d 1154, at 1155 and 1156.

Whether the error in admitting the evidence in the instant case was reversible,

depends considerably upon the surrounding circumstances, which are as follows:

Dr. Harold Pittman testified for the plaintiff. During his cross-examination he indicated that he would be glad to examine the hospital records to confirm one of his statements. Plaintiff's attorney then produced the hospital records from his possession and, without first examining the papers carefully, stated: "We will stipulate that these * * * may go into evidence if counsel would like * * *." Defendant's counsel said that he had no objection, and the court ordered them received in evidence. From these records, defendant's attorney then selected a report written by the doctor, and read part of it to him. Plaintiff's attorney, again without first taking the precaution of examining the document, demanded that the whole report be read, if it were to be used at all. Defendant's attorney tried to comply, but plaintiff's attorney suddenly realized that the letter contained reference to workmen's compensation coverage, and demanded that the reading of the complete letter cease before the last sentence was reached. Defendant's attorney then stated: "I would rather read the whole paragraph if I have to read it," and stated further that he would offer the document in evidence. The court observed that it was already in evidence. At this point plaintiff's counsel stated:

"In this hospital record there are certain things we think should be blotted out, and we request the court to now—"

Defense attorney then said:

"Without any qualifications whatsoever, there are certain now [sic] material things I would like to go into."

To which plaintiff's attorney replied:

"Well we ask the court to rule on the materiality of that."

The court then stated: "Well, the objection will be denied."

Plaintiff's attorney evidently hoped to prove that some statement of the doctor on the witness stand was inconsistent with some statement by the doctor in the report from which he was reading, for he then asked the doctor:

"The reason for the report, doctor, of April 27, 1961, was to reopen George Alfred Miller's case with the Industrial Commission. Isn't that true?"

Defendant's attorney at once said:

"We would object under the circumstances and ask that the jury be admonished to disregard it."

The court ruled that "The objection will be overruled and it may stand."

Counsel then argued the point briefly out of the presence of the jury, after which the court stated:

"The objection will be overruled. I will permit him to pursue it. You may request an instruction on it if you desire."

The cross-examination of the doctor then proceeded as follows:

"A. The report of April 26, 1961 was rendered to the Industrial Commission; that was, shall I say, one of the purposes of the report. The purpose of a report of course is document information for various people concerned. So that it was to document information for my purpose and also to furnish the Industrial Commission with information which would help them in their decision as to whether or not the case should be reopened.

"Q. When was the case first closed?

"A. My records would not show that. I am sorry.

"Q. I think September 17, 1960.

"A. That is correct. On September 17, 1960 the patient was discharged from Industrial Commission.

"Q. That is the reason; that as of that date you were of the opinion that his condition is stationary and there is no evidence of disability? Last line.

"A. That was my impression at that time.

"Q. Also was it your impression that there was no permanent disability?

"A. That is correct. No compensable permanent disability.

"Q. Well the wording that appeared in that report was 'No permanent disability.'

"A. Yes, those are my words of that date."

At this point, though the Industrial Commission's name had been introduced, the jury could not have known whether the compensation case was closed because plaintiff was ineligible for payments, or because payments had been completed. They could not have known whether reopening was for the purpose of ascertaining whether ineligibility should be reviewed, or for the purpose of making additional payments. In any event the jury could not have known whether any payment at all was made, or if so, how much.

■ We are not inclined to penalize an attorney who makes an inadvertent stipulation which he discovers and tries to correct before any damage has been done. The rules applicable to such a situation do not exist to award the verdict to the lawyer who plays the game most adroitly. The presence of the particular report in the hospital file was somewhat of a surprise to plaintiff's attorney, and when its nature was realized, he promptly sought to keep the letter out of the record. The situation is covered by our language in In re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497 in which we said:

"A stipulation must be construed in the light of the circumstances surrounding the parties and in view of the result which they were attempting to accomplish. In seeking the intent of the parties the language used will not be so construed as to give it the effect of an admission of fact obviously intended to be controverted, or the waiver of a right not intended to be relinquished."

In the instant case, if the error in allowing knowledge of workmen's compensation to come to the jury's attention is to be held not to be reversible error, the decision should rest not upon the inadvertent stipulation, but rather upon some more substantial ground.

■ Appellee argues that the material in the report was admissible to show that the doctor's testimony was wrong. It is probably true that the report could have been used to impeach the doctor if he had signed it and if it were contradictory to his testimony. In such case the report must be used properly, by first asking the doctor whether he had not, at the time of the report, made statements differing from his testimony at the trial. However, it is doubtful whether the report contradicted the doctor at all, and since the doctor admitted making the statement in the report, placing it in evidence could hardly prove anything not already admitted. Since the report contained prejudicial material, and added nothing to the proof, plaintiff's counsel should have been permitted to withdraw his stipulation as to the contested portion of the report, and the latter should have been excluded.

This procedure was not followed, and the report remained in evidence. The court, however, indicated that plaintiff might ask for an instruction. In line with this statement of the court the plaintiff could have asked for an instruction telling the jury that all evidence regarding the Industrial Commission should be disregarded, and that they should consider their verdict as if there were no such evidence. Instead, plaintiff requested an instruction that told the jury everything that he contends should have been kept from the jury.

Plaintiff's requested instruction was as follows:

"You are instructed that industrial compensation in the State of Arizona is payable to certain persons sustaining injury in the course of their employment. If, however, such injury is sustained in an accident involving a party other than the injured workman's employer, then the injured workman may, at his option, elect to accept *workman's compensation* or pursue a claim against the third party.

If the injured workman elects to pursue any remedy there may be against the third party, then by the exercise of his option he undertakes to reimburse the Industrial Commission for all monies expended by it by way of medical and hospital expenses from any monies that he may recover from the third party."

This instruction was given as requested, except for the striking out of the two underlined words "workman's compensation," and the substitution therefor of the words, "accident benefits: to wit, medical expenses from the industrial commission."

 The requested instruction was a waiver of the objection to the evidence of workmen's compensation coverage. Whether the initial error could have been cured by instructing the jury to completely disregard the objectionable evidence, is a question that we need not decide. Here plaintiff not only failed to insist upon his objection, but the instruction he requested actually conveyed to the jury more information than the evidence to which he had previously objected.

Our position on this question is supported by 89 C.J.S. Trial § 661, p. 508, where it is stated that:

"The admission of incompetent evidence is waived where the complaining party asks and obtains an instruction which assumes the competency of the evidence complained of, * * *."

The admission of improper evidence is not reversible error if later waived by the objecting party. Shannon v. Potts, 117 Ill.App. 80, Germann v. Kaufman's, Inc., 155 S.W.2d 969 (Tex.Civ.App.1941), Huges v. Lee, 238 Ark. 547, 383 S.W. 2d 97 (1964), Greenleaf's Lessee v. Birth, 5 Pet. 132, 8 L.Ed. 72. In re Kaiser's Estate, 150 Neb. 295, 34 N.W.2d 366, the court stated:

"A party may, by his acts or omissions, waive, or be estopped to make, objections to the admission * * * of evidence. Such waiver or estoppel may arise from

* * * some affirmative act done after the ruling on the evidence."

In the companion case wherein appellant, City of Phoenix, was plaintiff, and Joseph Hugh Schafer was defendant, it was stipulated that recovery of damages to the car driven by plaintiff Miller and owned by the City of Phoenix, would depend on the judgment in this case.

The judgment is affirmed.

BERNSTEIN, C. J., and UDALL, J., concur.