NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CARLOS M. AGUILAR, *Petitioner/Appellee*,

*v.*

ROSA E. AGUILAR, *Respondent/Appellant*.

No. 1 CA-CV 19-0437 FC
FILED 6-18-2020

Appeal from the Superior Court in Maricopa County
No. FC2013-051494
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Michael E. Hurley Attorney at Law, Phoenix
By Michael E. Hurley
*Counsel for Petitioner/Appellee*

Rose & Associates PLLC, Phoenix
By Timothy J. Rose
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Chief Judge Peter B. Swann joined.

---

**H O W E**, Judge:

**¶1**        Rosa Aguilar ("Mother") appeals the family court's granting Carlos Aguilar ("Father") sole legal decision-making authority and his request to relocate the children to Tucson. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and Father have two children, I.A., 14, and E.A., 12. Mother and Father divorced in 2013. Mother married Stepfather in 2014, who passed away before trial, and Father married Stepmother in 2016. In 2015, Mother petitioned to relocate the children to North Carolina and the parties stipulated to retain Dr. Carol Mellen to determine whether relocation was in the children's best interests. Mother and Father entered into a parenting plan agreement under Arizona Rule of Family Law Procedure 69, where Mother and Father shared joint legal decision-making authority, but Father had final authority. Mother and Stepfather then moved to North Carolina.

**¶3**        Mother moved back to Arizona in October 2016, and, in March 2017, petitioned to modify legal decision-making authority and parenting time. Mother requested joint legal decision-making authority and a 5-2-2-5 parenting plan. That same month, Father obtained an order of protection against Mother because she called the house and sent harassing text messages while drinking. The order stated that Mother could not have contact with Father, Stepmother, or the children and that Mother could not go near the children's school.

**¶4**        Also in March 2017, Mother moved for temporary orders, alleging that Father was not complying with the parenting plan. Mother and Father entered into a temporary parenting plan agreement, which required Father to remove the children from the order of protection and required Mother to undergo alcohol testing through Soberlink. Father went

to the court where he obtained the original order of protection and had it modified to remove the children but did not serve Mother with the modified order. Stepmother subsequently edited the original order of protection to include Stepfather and gave it to the children's school. After Mother tested positive for alcohol in May 2017, Father moved to suspend the temporary parenting plan. The court granted the motion because of Mother's positive test result. Mother tested negative through November 2017.

¶5         The court appointed a court appointed advisor ("CAA") to interview the parties and make best interest recommendations for the children. The CAA report confirmed that Mother drank alcohol to excess and cheated on her drinking tests in North Carolina. Mother also drank and committed domestic violence acts against Stepfather in North Carolina and after returning to Arizona. At one point, Mother also drove with I.A. in the car after mixing a prescription with alcohol and swerved across multiple lanes of traffic, almost hitting another car. I.A. had to hold the steering wheel driving home to prevent Mother from swerving. Mother denied this occurred.

¶6         In August 2017, Father started working in Tucson and would commute between Tucson and Phoenix while the children remained in Phoenix with Stepmother. The following month, Father notified Mother of his request to relocate to Tucson with the children. Mother then moved to prevent relocation and moved for the appointment of a therapeutic interventionist. The court ordered that the parties and children participate in therapeutic intervention to reunify Mother and the children.

¶7         Mother modified her petition for joint legal decision-making authority in September 2018 to seek sole legal decision-making authority. She alleged that Father had let Stepmother remove her from the children's school records and that Father was not complying with the therapeutic interventionist. That same month, Conciliation Services interviewed the children. The Conciliation Services report confirmed that the children wanted to move to Tucson with Father, that they were afraid of Mother, and that Mother had an alcohol problem and was still drinking. Mother also screamed at I.A. and told her that she was not "good enough" for her and cursed at both children.

¶8         The therapeutic interventionist reported that Mother and Father made progress in co-parenting sessions, that Mother "sincerely wants a better non-confrontational relationship with Children" and that

Mother "stayed calm and kind-hearted toward her Children despite their distant and sometimes angry attitude."

¶9            The family court held a two-day trial in December 2018 and February 2019. At the start of trial, Mother objected to the admission of Dr. Mellen's 2015 report that was prepared when Mother petitioned to relocate the children to North Carolina in 2015. Mother agreed that statements she and Father had made to Dr. Mellen were admissible but objected to any of Dr. Mellen's opinions and recommendations. During Mother's testimony, before the report was admitted, however, she testified about Dr. Mellen's report and one of Dr. Mellen's recommendations. The report was later admitted in evidence.

¶10          Mother also testified that she did not have access to the children's school records and that after the order of protection was modified, she was arrested at the children's school for violating the original order of protection. Mother testified that she tested positive for alcohol in May 2017 because of her medication. She also testified that she did not have an alcohol problem and that she drank excessively in front of the children only when she and Father divorced. Mother further testified that staying in Phoenix and having the children live with her was in their best interests because she would lose her relationship with the children if they moved to Tucson.

¶11          Mother admitted that she had many verbal altercations and two physical altercations with her adult daughter. She also admitted that I.A. and E.A. witnessed these verbal and physical arguments and that I.A. fell after getting in the middle of one of the arguments. Mother also admitted that in September 2017, she was arrested and charged with assault and pled guilty to disorderly conduct, a domestic violence offense, but did not disclose that to the therapeutic interventionist. Mother further admitted that she got into arguments with Stepfather and that one time she threw a glass on the floor.

¶12          Mother also admitted that in the summer of 2018, she sent I.A. a series of text messages. stating that she hated I.A., that she did not want to be near I.A., and that  I.A. was "evil," a "monster," an "asshole," and a "super ass." I.A. continuously texted Mother in July and August 2018, asking whether Mother would let her and E.A. move to Tucson with Father. Mother avoided answering the question for weeks before she eventually told I.A. that she "will get [her] wish" to move to Tucson. Mother then changed her mind and told I.A. that she could not move to Tucson and that if I.A. wanted her to change her mind, she needed to talk to her. Mother

also told I.A. that "I want to talk to [E.A.] and if you sa[y] one more time [it] is your phone I will give her the latest iPhone."

¶13        Father testified that, based on the therapeutic interventionist's recommendations, he tried to facilitate activities with Mother and the children but the children did not want to participate with Mother. Father opposed the appointment of a new therapeutic interventionist and the family court reduced both Mother's and Father's trial time by seven and a half minutes while getting the parties' positions on the issue. Father admitted that Stepmother was in a confrontation with Mother during one of the therapeutic intervention visits and that Stepmother altered the order of protection and gave it to the school. Father testified that the children wanted to move to Tucson and that he and Stepmother have family there whom the children are close with. He further testified that moving to Tucson was in the children's best interests because they would have a secure, stable environment.

¶14        The court granted Father's request to relocate the children to Tucson and awarded him sole legal decision-making authority. The court made specific findings under A.R.S. § 25–403(A) and A.R.S. § 25–408(I) and found that Mother's position on relocation had nothing to do with the children's best interests and that Mother had "exploited her ability to keep [I.A.] and [E.A.] from moving to Tucson in an effort to get [I.A.] to say and do what she wanted." The court also found that Mother had engaged in "emotional blackmail," as  Mother's text messages showed. Additionally, because the children were 14 and 12 years old, the court gave significant weight to their desires.

¶15        The court further found that "[w]hile there was no domestic violence between the parties and no physical abuse of the children," Mother engaged in domestic violence against Stepfather and her adult daughter that the children sometimes witnessed. The court then relied on Mother's substance abuse to find that Father established a rebuttable presumption that an award of sole or joint legal decision-making authority to Mother was not in the children's best interests. The court noted that Mother had tested positive for alcohol three weeks after being ordered to test through Soberlink and that her alcohol abuse was "long-standing" based on the reports of the children, her adult daughter, and Father. The court found that "Mother's testimony on this point was completely non-credible and undermined by other evidence."

¶16        The court restricted Mother's parenting time to supervised visits to protect "the children's physical, mental, moral, or emotional

health"[1] and awarded Father a portion of his attorneys' fees because Mother "engaged in emotional blackmail of I.A." and because Mother's "opposition to the relocation was not motivated by her concerns for the children's best interest, but by her own need for control." Mother moved for a new trial that the court summarily denied. Mother timely appealed.

## DISCUSSION

### 1. Best Interests Finding

¶17      Relying on *Owen v. Blackhawk*, 206 Ariz. 418 (App. 2003), Mother argues that the family court erred because it did not specify which factors under A.R.S. § 25–403(B) weighed in favor of which parent and did not explain why its decision was in the best interests of the children. We will affirm a family court's legal decision-making and parenting time order absent an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018). "In a contested legal decision-making or parenting time case, the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25–403(B).

¶18      The court made specific findings on the record about all the relevant factors under A.R.S. § 25–403(A) and A.R.S. § 25–408(I). Additionally, *Owen* is distinguishable from this case. In *Owen*, the court did not make findings on all the factors and the factors the court did make findings on did not weigh in favor of either parent. 206 Ariz. at 422 ¶ 12. Here, the court's findings made clear that, while some factors were neutral, most of the factors under § 25–403(A) weighed in Father's favor and none of the factors weighed in Mother's favor. The court's factual findings were sufficient.

¶19      Mother also argues that the record does not support the court's finding that relocation to Tucson was in the children's best interests. She argues that various evidence weighs in her favor, requiring reversal. She also argues that the court did not properly weigh the evidence related to Father's order of protection. We do not reweigh evidence, however, and will affirm if substantial evidence supports the court's ruling. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009).

---

[1]      Mother does not challenge the family court's finding that supervised visitation was necessary to protect the children's physical, mental, moral, or emotional health.

¶20     Substantial evidence supports the court's determination that relocation of the children to Tucson was in their best interests. Not only did both children want to move to Tucson, the evidence also showed that Mother's motives for protesting the petition for relocation had nothing to do with the children's best interests. Mother told the children that they would get their wish to move to Tucson and then changed her mind and would not reconsider unless I.A. talked to her. Father also testified that he had several family members in Tucson that the children were close with and that moving to Tucson would provide them with a secure and stable environment. Substantial evidence supports the family court's ruling and the court did not abuse its discretion by granting Father's petition for relocation.

¶21     Mother argues next that the court erred by failing to consider evidence that Father withheld the children's school records and that Stepmother modified the order of protection to include Stepfather. We presume that after admitting evidence, the court considered it before issuing a decision. *Fuentes v. Fuentes*, 209 Ariz. 51, 55 ¶ 18 (App. 2004). The court's ruling makes clear that the findings and orders were "[b]ased on the evidence presented and its assessment of the credibility of the witnesses." As a result, we presume the court considered evidence that Father withheld the children's school records from Mother and that Stepmother modified the order of protection.

¶22     Mother argues that the family court erred in its findings about the order of protection because the order did not meet the requirements of A.R.S. § 13–3601. Mother waived any objection to the family court's consideration of the order of protection, however, because she did not object to its admission and opened the door by testifying extensively about the order of protection. *See Miller v. Schafer*, 102 Ariz. 457, 461 (1967); *see also State v. Garcia*, 133 Ariz. 522, 526 (1982).

¶23     Mother also argues that the family court erred by not altering its ruling under Rule 83 to show that her March 2017 petition did not request sole legal decision-making authority and that her request for sole legal decision-making authority was not made until September 2018. If a court mistakenly overlooked or misapplied uncontested facts that were necessary to the ruling, the court may alter or amend "all or some of its rulings if it materially affected a party's rights." Ariz. R. Fam. Law P. 83(a)(1)(G). The court did not err by refusing to alter the judgment to reflect that Mother did not request sole legal decision-making authority until September 2018. The date that Mother switched from seeking joint legal

7

decision-making authority to sole legal decision-making authority was not necessary to the court's ruling.[2]

### 2. Domestic Violence

¶24            Mother argues that the court erred when it found significant acts of domestic violence without making specific findings in A.R.S. § 25–403.03(E). When determining the best interests of the child, the court is required to make findings about the factors listed under A.R.S. § 25–403(A)(8), including "[w]hether there has been domestic violence or child abuse pursuant to § 25–403.03." The court must first determine whether significant domestic violence exists or whether "there has been a significant history of domestic violence." A.R.S. § 25–403.03(A). If no significant domestic violence exists, the court must consider whether the presumption under § 25–403.03(D) applies. *See DeLuna v. Petitto*, 247 Ariz. 420, 425 ¶ 16 (App. 2019).

¶25            If a parent commits an act of domestic violence against the other parent, "there is a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act . . . is contrary to the child's best interests." A.R.S. § 25–403.03(D). This presumption may be rebutted and the court must make specific findings about the factors listed under § 25–403.03(E) to determine whether that presumption has been rebutted. *See DeLuna*, 247 Ariz. at 425 ¶ 16. If the presumption does not apply, the court must still "consider evidence of domestic violence as being contrary to the best interests of the child." A.R.S. § 25–403.03(B).

¶26            The court was not required to make specific findings under § 25–403.03(E). The court's ruling does not indicate that it found significant acts of domestic violence or that it applied the presumption under § 25–403.03(D). The court specifically found that "there was no domestic violence between the parties and no physical abuse of the children[.]" And the presumption under § 25–403.03(D) does not arise unless the "parent

---

[2]            Mother's argument on appeal that the record does not support the court's finding that Father "had to essentially move to Tucson alone in approximately March 2018" is waived because she did not raise it with the family court. *See Henderson v. Henderson*, 241 Ariz. 580, 586 ¶ 13 (App. 2017).

who is seeking sole or joint legal decision-making has committed an act of domestic violence against the other parent." Because the court found that no domestic violence occurred between the parties, the presumption under § 25–403.03(D) did not apply and the court was not required to make specific findings under Subsection (E). The court was still required, however, to consider evidence of domestic violence "as being contrary to the best interests of the child[ren]." *See* A.R.S. § 25–403.03(B). The court's ruling considered this evidence when it discussed Mother's acts of domestic violence against her adult daughter and Stepfather. As a result, the family court did not err when it did not make specific findings under § 25–403.03(E).

### 3. Substance Abuse

¶27 Mother argues next that the court erred when it found that she had substance abuse issues because no evidence showed that she had abused alcohol in the 12 months before she petitioned for modification of legal decision-making and parenting time. If a parent has abused alcohol "within twelve months before the petition or the request for legal decision-making or parenting time is filed, there is a rebuttable presumption that sole or joint legal decision-making by that parent is not in the child's best interests." A.R.S. § 25–403.04(A). To determine if the presumption is rebutted, the court should consider at a minimum "the absence of any conviction of any other drug offense during the previous five years[,] [the] [r]esults of random drug testing[,] . . . and [the] [r]esults of alcohol or drug screening." A.R.S. § 25–403.04(B).

¶28 Evidence showed that Mother abused alcohol within 12 months of her petition to modify legal decision-making and parenting time. Conciliation Services and the CAA report confirmed that Mother continued to drink when the children were with her after returning to Arizona in October 2016 and she tested positive for alcohol in May 2017, two months after she petitioned for joint legal decision-making authority and parenting time. The court properly applied a rebuttable presumption that an award of sole or joint legal decision-making to Mother was not in the children's best interests.

¶29 While Mother's Soberlink results were negative from May 2017 through November 2017, that was only one fact for the court to consider. The court also considered that Father obtained an order of protection against her in 2017 because she made calls and sent harassing

text messages while drinking. The CAA report and the children's interview confirmed that Mother was still drinking, drove with I.A. after drinking, and committed domestic violence against Stepfather as a result of her substance abuse even after returning to Arizona. While Mother testified that she did not have an alcohol problem and only tested positive for alcohol in May 2017 because of medication, the court found that she had missed multiple tests and that her testimony about her alcohol use was "completely non-credible." While conflicting evidence of Mother's substance abuse existed, the family court was in the best position to determine Mother's credibility and weigh conflicting evidence. *See Hurd*, 223 Ariz. at 52 ¶ 16. Thus, the family court did not abuse its discretion by finding Mother failed to rebut the presumption.[3]

### 4. Admissibility of Evidence

**¶30** Mother argues that the family court erred by admitting the CAA report in evidence. We review the admissibility of evidence for an abuse of discretion. *Larsen v. Decker*, 196 Ariz. 239, 241 ¶ 6 (App. 2000). The court may appoint a qualified court-appointed advisor, who must, among other things, "submit a report under A.R.S. § 25–406, *which is admissible*, stating the advisor's recommendations regarding the child's best interests and the basis for those recommendations[.]" Ariz. R. Fam. Law P. 10.1(a) & (d)(5) (emphasis added). The court properly admitted the CAA report under Rule 10.1(d)(5) and Mother withdrew her objection before the court admitted the report in evidence. As a result, the court did not err by admitting the report in evidence.

**¶31** Mother also argues that the family court erred by admitting Dr. Mellen's 2015 report in evidence. A party is required to file a pretrial statement listing "the exhibits that each party intends to use at trial" and "the objections and the specific grounds for each objection that a party will make if the exhibit is offered at trial[.]" Ariz. R. Fam. Law P. 76.1(f)(13). "A party waives the right to raise an objection at the trial or hearing if the specific objection to a[n] . . . exhibit . . . is not raised" in the pretrial

---

[3]     Mother's argument that her Soberlink results show that she tested negative for alcohol from May 2017 through April 2019 overstates the record, given that her Soberlink reports from December 2017 to April 2019 were not presented at trial. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) (stating that this Court is "limited to the record before the trial court").

statement. Ariz. R. Fam. Law P. 76.1(h). Additionally, when a party introduces the subject matter of an exhibit on direct examination, the party opens the door to its admission and waives any objection to it. *See Miller*, 102 Ariz. at 461; *see also Garcia*, 133 Ariz. at 526 ("Where the whole field of examination is opened by defense counsel, he opens the door to further inquiry and may not assign its fruits as error on appeal."). Mother waived any objection to the report's admission first by failing to object to the exhibit in her pretrial statement, and second by opening the door and testifying about the report, her statements to Dr. Mellen, and about one of Dr. Mellen's recommendations. As a result, Mother opened the door to the admission of Dr. Mellen's report and the court did not err by admitting it.[4]

### 5. Trial Time

¶32        Mother argues next that the court erred when it reduced her trial time to consider Father's objection to the appointment of a new therapeutic interventionist. A family court "may impose reasonable time limits appropriate to the proceedings." Ariz. R. Fam. Law P. 22(a). To merit reversal, a party "must show they incurred some harm as a result of a court's time limitations. *Gamboa v. Metzler*, 223 Ariz. 399, 402 ¶ 17 (App. 2010) (quoting *Brown v. U.S. Fidelity and Guar. Co.*, 194 Ariz. 85, 91 ¶ 30 (App. 1998)). Mother does not explain how the reduction in her time harmed her. She merely concludes that because the court reduced her trial time, it erred. Since Mother has shown no harm, we cannot say that the family court abused its discretion by reducing Mother's trial time.

### 6. Attorneys' Fees

¶33        Mother argues last that the family court abused its discretion when it awarded Father his attorneys' fees and denied her request for attorneys' fees. We review a family court's award of attorneys' fees for an abuse of discretion. *Breitbart-Napp v. Napp.*, 216 Ariz. 74, 83 ¶ 35 (App. 2007). While Mother argued that her request for attorneys' fees was reasonable in her motion for a new trial, she did not object to the family court's award of Father's attorneys' fees and has waived her arguments on appeal. *See Henderson*, 241 Ariz. at 586 ¶ 13.

---

4        Mother's argument that the family court erred by admitting Dr. Mellen's 2015 report because it allowed Father to relitigate issues that were previously adjudicated in 2016 fails for the same reasons.

## CONCLUSION

¶**34** For the foregoing reasons, we affirm. In our discretion, we decline to award Father his attorneys' fees. As the prevailing party, however, Father is entitled to his costs incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA